504 So.2d 1176 (1987)
STATE of Louisiana in the Interest of A.A.
No. 86-CA-671.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1987.
John M. Mamoulides, Dist. Atty., Denis Ganucheau, Beth Gaudin, Asst. Dist. Attys., Office of the Dist. Atty., Gretna, for plaintiff-appellee.
Bruce Netterville, Gretna, for defendant-appellant.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
This appeal arises from a Juvenile Dispositional Hearing which resulted in the incarceration of A.A. to the custody of the Department of Corrections for three years for his participation in an attempted armed robbery.
In May 1986, the sixteen-year-old juvenile was petitioned as a delinquent for having *1177 allegedly violated LSA-R.S. 14:27 and 14:64 (attempted armed robbery) and also for having allegedly violated LSA-R.S. 14:27 and 14:30 (attempted first degree murdertwo counts). A.A. denied the allegations of the petitions filed against him; however, later, he withdrew his former denial and admitted to one count of attempted armed robbery. As a result of this admission, the remaining two petitions alleging attempted first degree murder were dismissed by the State. A waiver of rights form signed by the juvenile is contained in the record. Prior to the disposition of the petition alleging attempted armed robbery, evaluations of the juvenile were performed. Following the evaluations, these recommendations were made to the court:
1) That A.A. receive the appropriate sentence deemed necessary to the Department of Corrections, hence, Louisiana Training Institute.
2) That while at L.T.I., A.A. be enrolled in a vocational counseling program or an adult education program in order that he can have some goals met upon his release from L.T.I.
3) That A.A.'s mother receive out-patient therapy to help her accept and deal with her son's situation and to be able to help her function as an effectual parent.
At the dispositional hearing, the juvenile court judge ordered the incarceration of the juvenile to the custody of the Department of Corrections for three years. The court ordered that the balance of the recommendations be carried out.
The juvenile has appealed and contends that the sentence of the Juvenile Court is excessive.
We find no merit in this contention and affirm the defendant's conviction and sentence.

FACTS
The following report was filed with the court outlining the filing of the petition of delinquency against the defendant:
"The F.I.R. indicates that A.A. and his co-defendant were attempting to rob an elderly gentleman who was on his way back from the grocery store. A.A. asked the man where his money was. The man told him `The hell with you' and began yelling out to his sister who was standing nearby. The F.I.R.. further states that A.A. then proceeded to pull a gun from his belt and reached to the victim's pocket. The victim swung the groceries at the subject. Co-defendant then told A.A. to `shoot the mother'. A.A. shot once at the victim and then began to ride east back towards the store. A witness turned victim (victim # 2) started chasing A.A. and his co-defendant in his truck. He forced A.A. into a ditch and then he ran off. Co-defendant drove his bicycle into a ditch also and pulled out a handgun. A.A. began to run away. Victim # 2 began to run behind him and the F.I.R. reports co-defendant starting shooting at Victim # 2. Luckily, victim # 2 jumped back into his truck and fled. However, the F.I.R. reports his truck was shot at four timesthe driver's side window was shattered, there were two bullet holes in the driver's side door, and the last bullet hole was above the rear tire (also the driver's side).
Victim # 1 (the elderly man) advised police that A.A had the gun and was shooting. Victim # 2 (the man in the truck) advised police that co-defendant had the gun and was shooting."
A.A.'s version of the facts is somewhat different than the above. With regard to the charges, A.A. states that he and two other youths were coming back from a track meet when one of his companions suggested that they rob a man who was coming through the field. A.A. agreed but said he would just stay back and watch. A.A. claims he ran away from the scene after he saw the first gunshot. He said he was approximately fifteen yards from the scene when he heard a second gunshot. He claims he then ran down the street. A.A. said the police caught one of the other youths who pointed him out as an accomplice.

*1178 Excessive Sentence Review

Article I, Sec. 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." For a sentence to be excessive, the penalty must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State in the Interest of Johnson, 461 So.2d 551 (La. App. 3rd Cir.1984).
Where excessive commitment is complained of in juvenile proceedings, the record must be reviewed to determine whether the juvenile court has imposed the least restrictive disposition consistent with the circumstances of the case, the child's needs, and the best interest of society. C.J.P. art. 86; State in the Interest of Garner, 484 So.2d 149 (La.App. 3rd Cir. 1986). Much discretion is granted to the court because of the special nature of juvenile proceedings, but the court must balance the needs of the child with the best interest of society. State in the Interest of Ray, 432 So.2d 312 (La.App. 5th Cir. 1983). Although C.J.P. art. 86 does not specify that the record shall contain a particularization of the facts supporting the juvenile commitment, the record must nonetheless provide us with criteria with which to evaluate the disposition. State in the Interest of Garner, supra at 151.
Before committing the juvenile to the custody of the Department of Corrections, the juvenile court judge stated:
"What disturbs me is they're[sic] all classes of armed robbery, I suppose, in my mind, but in this there's active use of a weapon, I think, with the intention of trying to take someone's life. And I think, but for the grace of God, someone would have died. I'm not sure, I understand why somebody didn't in this case. I have some difficulty with it. The maximum period of time for which you can be sentenced under the Juvenile Code is until he shall have attained the age of twenty-one which is approximately four years away. Give or take a month or so. In light of the fact that he is, in fact, though, a first offender and I had misunderstood in my first cursory reading of the report that he was that, in light of the fact that he has not previously been before the court, the court sentences him to three years with the Department of Corrections...... to carry into effect the balance of the recommendations."
The following circumstances are also relevant in determining whether the sentence is excessive. A.A. was originally petitioned as a delinquent for alleged violations of L.R.S. 14:27 and 14:64 (attempted armed robbery) and L.R.S. 14:27 and 14:30 (attempted first degree murdertwo counts). The petitions alleging attempted first degree murder were dismissed by the State in exchange for the juvenile's admission to the petition alleging attempted armed robbery. A.A. admits that he agreed to the robbery and although there is some discrepancy about who possessed and actually fired the gun, a weapon was involved and caused danger to human lives. Also taken into account were the various evaluations performed on A.A. and the resulting recommendations. Psychologically, the juvenile is functioning within the borderline/slow learner range of intelligence, but the potential for somewhat higher functioning is suggested. A.A. presented himself as an emotionally unstable youth with hostile and aggressive tendencies. Academically, A.A. was suspended for the remainder of the year from the ninth grade at Ehret High School during the third nine weeks. Both he and his mother further acknowledged that he received four suspensions; however, they were unable to recall why they had been received, although it appears the fourth suspension involved breaking into a drink machine. The juvenile's mother further acknowledged that her son had been experiencing behavioral problems since sixth grade, including disruptive classroom behavior, refusal to bring books and homework to class, problems with persons in authority, and fighting. Previously, A.A. had failed the sixth, seventh and eighth grades, although it is unclear as to the specific reason. Following the evaluations on A.A., it was suggested that the juvenile would benefit from a highly structured environment *1179 that provides well-defined and consistent limits, expectations, and consequences.
After considering the evaluations and recommendations, the juvenile court judge ordered the incarceration of the juvenile to the custody of the Department of Corrections for three years, with the remaining recommendations to be carried out. Given the serious nature of the offense and the juvenile's behavioral problems and aggressive tendencies, the judge did not abuse his discretion in sentencing the juvenile to three years, even though A.A. is legally classified as a first offender. The trial judge properly balanced the needs of the child (placement in a highly structured environment) with the best interest of society, and imposed the least restrictive alternative that he felt was available under the circumstances of the case.
For the foregoing reasons, the conviction and sentence of the juvenile defendant, A.A., are affirmed.
AFFIRMED.