616 So.2d 211 (1993)
STATE of Louisiana, Plaintiff/Appellee,
v.
B.E., Defendant/Appellant.
No. 92-KA-929.
Court of Appeal of Louisiana, Fifth Circuit.
March 17, 1993.
*212 John M. Mamoulides, Dorothy A. Pendergast and Joan Benge, 24th Judicial Dist., Gretna, for plaintiff/appellee, State of Louisiana.
John H. Brooks, Gretna, for defendant/appellant, B.E.
Before KLIEBERT, C.J., and BOWES and DUFRESNE, JJ.
*213 BOWES, Judge.
This is an appeal from an adjudication of delinquency.
On August 28, 1991, the District Attorney filed a petition ("B") in the Jefferson Parish Juvenile Court seeking to have B.E., Jr.[1] adjudicated a delinquent based on an alleged violation of LSA-R.S. 14:34.1, second degree battery.
Another petition ("C") was filed on September 19, 1991, seeking to have B.E. adjudicated a delinquent for the commission of a simple battery in violation of LSA-R.S. 14:35.
The simple battery charge (petition "C") proceeded to adjudication on July 1, 1992. After considering the evidence presented, the judge adjudicated the minor delinquent as charged.
On September 2, 1992, the second degree battery charge (petition "B") proceeded to adjudication. Following the presentation of testimony, the judge adjudicated B.E. delinquent as charged on that petition also.
At the October 8, 1992 disposition hearing, the judge committed B.E. to the Department of Public Safety and Corrections/Louisiana Training Institute for eighteen months on the second degree battery adjudication and for six months on the simple battery charge, to run concurrently. The matter was set for a review hearing in six months.
A motion for appeal was thereafter filed.

FACTS SURROUNDING THE SIMPLE BATTERY CHARGE (PETITION "C")
On August 26, 1991, Earl St. Pierre was walking home from school with Kimberly Morris, an ex-girlfriend, when he felt someone punch him in the ear.[2] St. Pierre looked around and saw that it was B.E. who had hit him. The two boys then began fighting. When they stopped, B.E. walked up to Kimberly Morris and spit in her face. The two juveniles then began fighting again. As a result of this incident, St. Pierre had bite marks on his arm and ear.
Defense counsel presented testimony of B.E. and two friends to show that St. Pierre was upset at B.E. for going out with his girlfriend, Kimberly Morris. Defense counsel also attempted to show that there was friction between the two juveniles because of an altercation that occurred between B.E. and Patrick Boudreaux, an "old friend" of St. Pierre's.
This testimony was contradicted by the testimony of St. Pierre and of Kimberly Morris.
After listening to this testimony, the judge adjudicated B.E. delinquent for the commission of a simple battery.

FACTS SURROUNDING THE SECOND DEGREE BATTERY (PETITION "B")
On August 3, 1991, Patrick Boudreaux was sitting on the hood of his car talking to some friends outside the house of Michelle and Greg Barbier in Harvey. B.E. and a few other youths drove up to drop off one of Michelle's friends. B.E. got out of the car and the next thing that Patrick Boudreaux remembered was "Greg was holding me up in front of my car." As Greg was helping Boudreaux up, the victim asked who had done this. B.E., whose friends were holding him back, looked at him and said "Do you want some more?" Patrick was subsequently taken to a hospital emergency room and underwent surgery about a week later. As a result of this incident, Patrick's nose, jaw, and several other bones around his eye were broken. On cross-examination, the victim testified that as far as he knew, no bad blood existed between he and B.E.
Both Michelle Barbier and another witness, Rhett Thibodeaux, testified that they saw B.E. kick Boudreaux in the head.
Defense counsel presented the testimony of three friends of B.E., Christopher Jones, *214 Chad Rachel and Benjamin Charles. They testified that they went with B.E. to the Barbier's house for a party. When they walked in the yard, they heard Patrick say "who invited this public school trash?" Patrick then spit on B.E. and turned his head away. At that point, B.E. hit him with his fist and kicked him in the leg once.
The parties then stipulated that if defense counsel called Calvin Chauvin and Joe Park as witnesses, their testimony would be the same as defendant's other three witnesses.
After this stipulation, defense counsel agreed to stipulate that the state's rebuttal witnesses would testify that Chad Rachel was not present the night of the incident.
Peggy Boudreaux, the victim's mother, testified that on August 3, 1991, some friends brought Patrick home and his face was full of blood and his eye was swollen. He was weak and his friends had to help him walk in. She brought him straight to the hospital. Three bones around his face were broken; his top jaw was cracked; and his nose was broken. About a week after the incident, he underwent surgery and he has been to the doctor for follow-up treatment.
After considering this testimony, the judge adjudicated B.E. delinquent for the commission of second degree battery.
On appeal, B.E. challenges the sufficiency of the evidence used to convict him. He further alleges that the trial judge erred in imposing excessive sentences.

SUFFICIENCY OF THE EVIDENCE
In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. LSA-Ch.C. art. 883. That burden of proof standard is no less strenuous than the proof standard required in a criminal proceeding against an adult. The due process standards announced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) apply in evaluating the sufficiency of evidence to support an adjudication of delinquency in a juvenile matter. Under Jackson, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. State in Interest of D.R., 560 So.2d 57 (La.App. 5 Cir.1990); State in Interest of Tatom, 463 So.2d 35 (La.App. 5 Cir.1985).
In the present case, B.E. was adjudicated a delinquent for the commission of simple battery and second degree battery. Each offense will now be individually discussed.
B.E. was also adjudicated a delinquent for the commission of a simple battery, LSA-R.S. 14:35. Simple battery is defined as the intentional use of force or violence upon the person of another without that individual's consent. LSA-R.S. 14:33 and 14:35. State v. Interest of F.B.M., 535 So.2d 980 (La.App. 2 Cir.1988).
At the trial of this offense Earl St. Pierre testified that while walking home from school, B.E. approached him from behind and punched him in the ear without his consent. In contrast to this testimony, B.E. presented evidence that Earl St. Pierre threw the first punch. The assessment of credibility is within the realm of the fact finder. State v. Faulkner, infra. We find the evidence presented was sufficient to show that B.E. committed a simple battery on Earl St. Pierre without his consent.
LSA-R.S. 14:34.1 defines second degree battery as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
To convict a person of second degree battery, the state must prove the following elements beyond a reasonable *215 doubt: (1) the intentional use of force or violence upon the person of another; (2) without the consent of the victim; and, (3) when the offender has specific intent to inflict serious bodily injury. State v. Fuller, 414 So.2d 306 (La.1982); State v. Faulkner, 570 So.2d 516 (La.App. 5 Cir.1990); State v. Robinson, 549 So.2d 1282 (La.App. 3 Cir.1989).
Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Edge, 504 So.2d 1169 (La.App. 5 Cir.1987), writ denied, 507 So.2d 226 (La.1987). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard, supra. State v. Huizar, 414 So.2d 741 (La.1982).
In the present case, the trial judge was faced with conflicting testimony. On the one hand, the juvenile presented evidence that he was sitting on the hood of the car and B.E. kicked him in his head four or five times without his consent. After the incident, his face was bloody and swollen and he was in a daze, "kind of knocked out." Patrick Boudreaux was brought to the emergency room for treatment and underwent surgery about a week later. His injuries included a broken nose, a broken jaw, and several broken bones around the eye area.
In contrast to this testimony, B.E. presented evidence that the victim started the altercation by asking who invited this "public school trash" and then spitting on B.E. The judge, by his verdict, obviously chose to believe the testimony of the victim and his witnesses. See State v. Faulkner, supra. Thus, we find that viewing the evidence in the light most favorable to the prosecution, the state proved all of the elements of second degree battery beyond a reasonable doubt.
B.E. also argues that the trial judge erred in failing to consider the doctrines of provocation, justification, or mitigation because "it is clear that a provoker or `aggressor' cannot claim to be battered, that one can commit what would otherwise be a battery in defense of suffering a battery, and that provocation short of itself being a battery should be considered in mitigation." Basically, it appears that defense counsel argues that under his version, since the victims each provoked the respective altercations, the juvenile, B.E., was justified in his actions.
The record reflects that the judge listened to all the evidence, including the defendant's version of events that the victims provoked or began the altercations. As evidenced by his verdicts, the trial judge believed the version of events as related by the victims and their witnesses. It is not the function of the reviewing court to reassess credibility determinations beyond an evaluation of sufficiency under the Jackson standard. We hold that the evidence presented herein supports the defendant's convictions and his arguments to the contrary are without merit.

EXCESSIVE SENTENCE
B.E. was committed to Louisiana Training Institute for eighteen months on the second degree battery and six months on the simple battery, to run concurrently. The judge informed the juvenile that he would review the sentence in six months, with the possibility of being released.
B.E. argues that these sentences imposed are excessive and also that they are a "tragedy" because they will interfere with his schooling.
Art. I, Sec. 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." In imposing sentences in juvenile matters, much discretion is granted to the trial court because of the special nature of the proceedings; however, the court must balance the needs of the child with the best interest of society. *216 State in Interest of Ray, 432 So.2d 312 (La.App. 5 Cir.1983) See also sentencing guidelines set forth in LSA-Ch.C. art. 901.
Where excessive commitment is complained of in juvenile proceedings, the record must be reviewed to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child's needs, and the best interest of society. LSA-Ch.C. art. 901; State in Interest of A.A., 504 So.2d 1176 (La.App. 5 Cir.1987).
After considering the entirety of testimony at the disposition hearing, the judge stated as follows:
[I], if I didn't do something with you now son, I don't know what's going on with you in life. I don't know what's going on with you but you are heading down a real violent path and if I don't do something with you now you are going to say, "Well I can get by with this kind of activity for the rest of my life", and you'll do it. You will try to do it. Because somebody is going to call you in someday and he's going to be tougher than you are. At this time I'm going to sentence you to serve on the Second Degree Battery eighteen months at the Department of Corrections. On the simple battery, six months at the Department of Corrections. Make them run concurrently and I am going to suspend ... rather I'm going to bring you back and not suspend any of it and serve the eighteen months. I'm going to bring you back in six months and see how you are doing. Now, in six months it you've got the notion that life is not like this ... that life is not suppose to be like this ... that you're not suppose to go around injuring people and you truly got a handle on what's going on in life, then you can be released in six months. No promises. I do this religiously and I review kids in six months and we'll see how you are doing. If you are doing okay you don't have to serve the whole eighteen months. Do you understand?
In committing B.E. to Louisiana Training Institute the judge apparently considered the juvenile's violent tendencies and the serious nature of the offenses. Although the judge did not articulate many reasons for the sentence, the record itself reflects the extreme and brutal violence used by the defendant resulting in severe and possibly permanent injuries to Patrick and supports the sentence imposed. This is especially so in light of the fact that the judge set the matter for a review hearing in six months with the possibility, depending on the juvenile's progress, that he would be released at that time. We find that the sentence imposed was the least restrictive disposition consistent with the circumstances of the case, the child's needs, and the best interest of society.
Accordingly, we find that the sentences imposed are not excessive.
In addition, we have reviewed the record before us for errors patent in compliance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975) and find none.
For the above discussed reasons, the juvenile's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] In his brief, the juvenile's attorney points out that his client's name is B.E. and not B.E., Jr.
[2] Through the testimony at the adjudication hearing, it was learned that earlier that day, the two boys had a shoving match at school that resulted in B.E.'s suspension.